**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JADA PATTON, a minor,** | : | **CIVIL ACTION** |
| **by DAWN DANIELS-PATTON, Guardian** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SMITHKLINE BEECHAM CORPORATION** | : | |
| **d/b/a GLAXOSMITHKLINE** | : | **NO. 11-5965** |

----------------------------------------

| | | |
|---|---|---|
| **ERIKA D. DREESSEN, a minor, by** | : | **CIVIL ACTION** |
| **HEATHER M. DREESSEN A/K/A HEATHER** | : | |
| **M. WHITE, Guardian** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SMITHKLINE BEECHAM CORPORATION** | : | |
| **d/b/a GLAXOSMITHKLINE** | : | **NO. 11-5967** |

----------------------------------------

| | | |
|---|---|---|
| **BROOKE SEACRIST and CHARLES** | : | **CIVIL ACTION** |
| **SEACRIST, Individually and on behalf** | : | |
| **of JAXSON SEACRIST** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SMITHKLINE BEECHAM CORPORATION** | : | |
| **d/b/a GLAXOSMITHKLINE** | : | **NO. 11-6268** |

----------------------------------------

| | | |
|---|---|---|
| **CAROLINE WILLIAMS and KEVIN** | : | **CIVIL ACTION** |
| **WILLIAMS, Individually and on behalf of** | : | |
| **KEVION WILLIAMS** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SMITHKLINE BEECHAM CORPORATION** | : | |
| **d/b/a GLAXOSMITHKLINE** | : | **NO. 11-6269** |

----------------------------------------

AUSTIN STALEY, a minor, by SALLE    :     CIVIL ACTION
MILLER, Guardian and SALLE MILLER  :
Individually                           :
                                       :
       v.                        :
                                       :
SMITHKLINE BEECHAM CORPORATION  :
d/b/a GLAXOSMITHKLINE         :     NO. 11-6641

-------------------------------------------

JOSEPH CAMMAROTA, a minor, by     :     CIVIL ACTION
AMY LYNN HALLOCK, Guardian and   :
AMY LYNN HALLOCK, Individually    :
                                         :
       v.                        :
                                       :
SMITHKLINE BEECHAM CORPORATION  :
d/b/a GLAXOSMITHKLINE         :     NO. 11-6642

-------------------------------------------

ISABELLA CINTAO, a minor, by       :     CIVIL ACTION
MARIA PINO and TOMAS CINTAO,     :
Guardians and MARIA PINO and TOMAS :
CINTAO Individually              :
                                       :
       v.                        :
                                       :
SMITHKLINE BEECHAM CORPORATION  :
d/b/a GLAXOSMITHKLINE         :     NO. 11-6643

-------------------------------------------

MIRACLE KENNEY, a minor, by        :     CIVIL ACTION
CHRISTINE KENNEY, Guardian and    :
CHRISTINE KENNEY, Individually    :
                                         :
       v.                        :
                                       :
SMITHKLINE BEECHAM CORPORATION  :
d/b/a GLAXOSMITHKLINE         :     NO. 11-6644

-------------------------------------------

KAYLEA GUDDECK, a minor, by         :        **CIVIL ACTION**
JULIE GUDDECK, Guardian and       :
JULIE GUDDECK Individually          :
                                   :
       **v.**                          :
                                   :
**SMITHKLINE BEECHAM CORPORATION**  :
**d/b/a GLAXOSMITHKLINE**         :        **NO. 11-6645**

<u>**MEMORANDUM OPINION**</u>

Savage, J.                                             **December 14, 2011**

        As it did in earlier pharmaceutical product liability cases involving the drug Paxil that it had removed from the state court, the defendant GlaxoSmithKline, LLC ("LLC") opposes the plaintiffs' motions to remand these cases.  It challenges the determination in *Brewer v. SmithKline Beacham Corp.*, 774 F. Supp. 2d 720 (E.D. Pa. Mar. 24, 2011) that, for jurisdictional purposes, LLC is a Pennsylvania citizen and cannot remove a  case from a Pennsylvania state court on the basis of federal diversity jurisdiction under 28 U.S.C. § 1332.  LLC argues that we misapplied the "nerve center" test announced in *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), and the citizenship test established in *Zambelli Fireworks Manufacturing Co. v. Wood*, 592 F.3d 412 (3d Cir. 2010), when we held that in the case of a limited liability company whose sole member is a non-operating holding company, which delegated its operational decision-making to the limited liability company, the "nerve center" is that of the limited liability company rather than the non-operating holding company.

        LLC does not and cannot contest the facts recited in *Brewer*.[1]  It challenges the

---

[1] The factual findings and the analysis of those facts are set forth in the *Brewer* opinion and will not be reiterated here.

inferences and conclusions drawn from those facts, and disagrees with the application of the law to those facts.  In short, LLC argues that the *Brewer* decision was wrong.

LLC miscomprehends the reasoning in *Brewer* and misapplies the facts to the law. After thoroughly reviewing the current record, including the supplemental materials submitted in the recent cases, and reconsidering the *Brewer* opinion, we conclude that *Brewer* was correctly decided.  Therefore, we shall remand these actions.

LLC contends that the record now is more developed since *Brewer* was decided. LLC argues that newly presented evidence shows that there was no delegation of LLC's sole member's authority, there was no jurisdictional manipulation, and the corporate structure was not unusual.  Despite the supplements, the essential facts remain the same.

Nothing LLC has presented since *Brewer* changes the framework of the jurisdictional analysis focusing on operational decision-making.  The essential facts have not changed.  They are the same now as they were then.  LLC is a limited liability company that operates GlaxoSmithKline plc's pharmaceutical and health care business in the United States.  Its sole member is GlaxoSmithKline Holdings (Americas) Inc. ("Holdings"), a non-operating holding company incorporated in Delaware.  Holdings does not direct, manage or control any of LLC's operations.  LLC's officers and directors do what they did for LLC's predecessor corporation, SmithKlineBeecham Corporation ("SKB") – making operating decisions in the Philadelphia headquarters.

LLC's supplemental submissions do not change the result.  Although Victor Vogel's[2] testimony and the amended government contracts tend to show that Holdings was erroneously listed as the contracting party with a Philadelphia address, it does not dispel

---

[2] Vogel is an in-house LLC attorney who handles government contract issues.

the reasonable inference that Holdings and LLC had perceived the Philadelphia headquarters as the principal place of business.  The timing of the changes to the contract documents is not coincidental.  Only after it became apparent that its decision-making out of the Philadelphia headquarters posed jurisdictional problems in the multitude of Paxil cases did LLC make any effort to correct its contracts and to amend its by-laws to change the office from Philadelphia to Wilmington.  As we observed in *Brewer*, these efforts were belatedly made to defeat jurisdiction in Pennsylvania.

We repeat and emphasize that the formation of LLC was not done with the intent to manipulate jurisdiction.  Rather, the post-litigation conduct was.  Nevertheless, whether LLC's and Holdings's later conduct constitutes jurisdictional manipulation is not controlling.  Whether it was manipulation or not does not affect the ultimate conclusion.

LLC has presented no new facts regarding Holdings's delegating the operational decision-making to LLC's directors and officers who made those decisions in Philadelphia.  Indeed, there is nothing in the supplemental record that contradicts, and there has been no retraction of, Heslop's testimony that LLC is "simply a continuation of what used to be SKB,"[3] which made and continues to make its business decisions in its Philadelphia office.

**Clarification of *Brewer***

Isolating language outside its context, LLC makes much of our characterization of the corporate relationship between LLC and Holdings as "unique" and the circumstances presented for application of the *Hertz* nerve center test as an "anomaly."  Perhaps we were unclear and we could have stated it differently to convey our intended meaning.

---

[3] Heslop Dep. at 145.

We agree with LLC and its expert, Jonathan Macey, that holding companies and single member limited liability companies are not unusual and are, indeed, common. LLC is not unlike any other holding company. Despite LLC's implication, *Brewer* did not say otherwise.

What *Brewer* means is that the corporate structure and the relationship between the limited liability company and its sole member were not what the *Hertz* and *Zambelli* courts confronted. The *Hertz* "nerve center" test and the limited liability company citizenship test, which has not been adopted by the Supreme Court, did not intersect in either case. In *Brewer,* they did. Thus, when we referred to the "melding" of the two tests in these "unique circumstances," we were acknowledging that the issue was a novel one, requiring application of the two tests to circumstances never before encountered.

In *Brewer,* we could have used clearer language in describing the interplay between the *Hertz* "nerve center" test and the *Zambelli* limited liability company citizenship test. Rather than stating that the tests meld, we should have more precisely explained that they intersect where the sole member of a limited liability company is a holding company that has a single constituent operating company.

## The Delegation of Management Issue

Under the Delaware Limited Liability Company Act ("LLC Act"), a limited liability company may be managed either by its members or by a non-member manager. Who manages the company is designated in the operating agreement. If the agreement is silent, the members manage it. Unless the operating agreement provides otherwise, "the

management of a limited liability company shall be vested in its members."[4]  Del. Code
Ann. tit. 6, §§ 18-402.  The members can designate a non-member person to manage the
company.  If the operating agreement provides that the company shall be managed by a
non-member, then the "management of the limited liability company, to the extent so
provided, shall be vested in the manager" chosen by the members.[5]  *Id.*   Thus, the
members forming the company designate who will manage the company – either the
members or non-members.

Holdings, which had been the sole shareholder of SKB, converted SKB into a limited
liability company under the LLC Act.  *See* Del. Code Ann. tit. 6, §§ 18-201, 214.[6]  When
Holdings created LLC, it was LLC's sole member.[7]  At LLC's inception, Holdings, as the
sole member, had the exclusive right and power to control, direct, run, manage and
operate LLC.  *See* Del. Code Ann. tit. 6, § 18-402.  Had it chosen the member-managed
form of a limited liability company, Holdings would have retained its absolute right, power
and authority to control and operate LLC's business.  *See id.*; Thomas A. Humphreys,
*Limited Liability Companies & Limited Liability Partnerships* § 2.02[4](d) (2010).  Instead,
Holdings elected to make LLC a manager-managed company.  In doing so, it relinquished
its right and power to manage and operate the company.  When Holdings adopted the
Operating Agreement to effectuate its election, it delegated the operational decision-

---

[4] This is known as a "member-managed" limited liability company, which is considered to have
"decentralized" management.  Thomas A. Humphreys, *Limited Liability Companies & Limited Liability
Partnerships* § 4.02[2](a) (2010).

[5] This is known as a "manager-managed" company, which has "centralized" management.
Humphreys, *supra* note 4, at § 4.02[2](a).

[6] Heslop Decl. ¶ 9.

[7] *See* Certificate of Formation (indicating the name of the company and its registered address and
agent, and that it is signed by Holdings as "its sole member.").  It remains the sole member.

making authority and power to LLC's officers and directors.  Put another way, Holdings determined that the directors and officers of LLC were to be LLC's "managers."

Management of LLC's operations does not reside in Holdings, the sole member. Rather, as intended, Holdings plays no role in LLC's operations, a significant factor in applying the *Hertz* "nerve center" test.

LLC asserts that *Brewer* is based on a misunderstanding that Holdings delegated its operational decision-making.  It argues that because LLC was formed as a manager-managed company via its Operating Agreement, Holdings had nothing to delegate under §18- 407.[8]  Stated differently, LLC contends that because the Operating Agreement vested the right to manage LLC in the managers whom Holdings appointed to manage LLC, Holdings never had the right and power to manage and control LLC's business.

GSK's argument ignores the formation process and does not reflect the reality of the conversion of SKB to LLC.  LLC wants to focus on a time after Holdings had formed LLC and had established the manager-managed form.  It is facially correct that if a limited liability company is manager-managed, and the company agreement provides that the member shall appoint a manager to control, direct and manage the company's operations and business, the member, in this instance Holdings, has no management authority to delegate under  § 18-407.  But, when Holdings, the sole shareholder of SKB and the sole member of LLC, created LLC, it had the original authority to manage and control LLC's business.  In other words, at formation, it had the authority and the option to manage the LLC or to nominate others.  At that time, under § 18-402, it chose the latter.

---

[8] *See* LLC's Opp'n to Pls.' Mot. to Remand (Doc # 24 in Civ. A. No. 11-2812) at 20-22.

2

Consistent with Heslop's understanding and SKB's intent that LLC was "simply a continuation of what used to be SKB," the board of directors of SKB seamlessly transitioned to the board of managers of LLC. The Operating Agreement specifically provided that "the members of the board of directors of SmithKlineBeecham shall continue as the initial Managers" of LLC.[9] They have continued to manage LLC. In other words, the same people who managed the operations of SKB have continued to manage the successor company from the same headquarters in Philadelphia. Thus, as permitted under § 18-402 of the LLC Act and LLC's operating agreement, the management of the LLC is vested in the Board of Managers.

Heslop confirmed that Holdings placed the decision-making authority affecting the direction, control and coordination of LLC in the hands of those actually running the LLC operation in Philadelphia. He testified that senior officers direct and control the activities of the United States pharmaceutical business from Philadelphia. The operational and business decisions affecting LLC are not made by Holdings or its board of directors, but by the officers and directors of LLC. In short, although Holdings retains its membership status, it does not have managerial authority, which resides in LLC's managers, the former board of directors of SKB.

Although the managers are not members of the LLC, they are part of the LLC. On the one hand, they are separate and distinct from the LLC; but, on the other hand, they act for and on behalf of the LLC. Their authority derives from the LLC and that authority can be revoked and transferred to the sole member by amending the operating agreement.

---

[9] *See* Operating Agreement, Art. IV, § 4.1 ("Pursuant to the Conversion, the members of the board of directors of SmithKline Beecham Corporation shall continue as the initial Managers of the Company. . . .").

LLC, relying on Macey's literal interpretation of Delaware law, splits linguistic hairs in an attempt to disregard or mischaracterize the practical underpinning of the *Brewer* holding.  LLC focuses on the *de jure* transfer of management authority while ignoring the *de facto* delegation.  It is the relationship of Holdings and LLC that is of significance in an analysis of the focus of the operational decision-making for purposes of applying the "nerve center" test.  The limited liability company citizenship test, which has not been adopted or approved by the Supreme Court, cannot subvert the Supreme Court's "nerve center" test.

The difference between the vesting of management authority to managers pursuant to § 18-402 as opposed to under § 18-407 is when the vesting occurs.  Under § 18-402, a transfer of management authority occurs when the operating agreement is drafted and adopted.  At that time, the members decide to manage the company themselves or designate non-members to do it.  On the other hand, under § 18-407, the transfer of management authority occurs after the operating agreement has been effective.  In a § 18-402 delegation, the members cede management to a manager designated in the operating agreement.  In a § 18-407 delegation, the members or the managers, whichever are designated in the operating agreement as managers, transfer the management authority to others.  This obligation takes place some time after the company has been operating.  Section 18-407 provides a vehicle for later action.

LLC wants to start the delegation inquiry after the company was formed and after the effective date of the operating agreement.  It wants to ignore the status at the time of formation – the time when Holdings had all authority and before it elected to become manager-managed.

Macey, LLC's expert, opines that "the Board of Managers (rather than GSK

4

Holdings) had the original authority to manage the LLC."[10]  This is not correct.  The "original authority" rested with Holdings until it chose the manager-managed structure.  Had it not made an election, it would have retained its management authority as LLC's sole member by operation of § 18-402.

GSK also argues that *Brewer* relied on LLC's purportedly unique or anomalous structure as a single-member limited liability company subsidiary to create a new rule for determining the principal place of business for a limited liability company.  *Brewer* did not find LLC's  structure unique or anomalous.  Rather, what was novel was the application of the *Hertz* "nerve center" test for determining citizenship to a single-member limited liability company whose sole member is a holding company that does not direct or control the operations of the limited liability company.  This situation is unusual in that it was not what the *Hertz* Court contemplated or applied.  Indeed, *Hertz* foretold that its nerve center test may not work in all situations.  *Hertz*, 130 S. Ct. at 1194.

The *Brewer* holding is narrower than GSK makes it out to be.  It does not apply to all limited liability companies.  Nor does it apply to all manager-managed limited liability companies.  *Brewer*, reflecting the Supreme Court's caution in *Hertz* that the nerve center test may not mechanically apply to every situation and focusing on the operational decision-making, is limited to the facts of these cases.  *Id*.

*Brewer* was not inconsistent with *Hertz* when, to determine the holding company's principal place of business, it looked to the "nerve center" of the limited liability company to which the sole member holding company had given the operational decision-making.

---

[10] Macey Decl. ¶ 40.

It was an application of *Hertz* to those facts.  As GSK concedes, a holding company is unlike a traditional operating company.  Literally applying the *Hertz* "nerve center" test, without analyzing the facts surrounding the operational decision-making, would exalt form over substance.

**Conclusion**

Because LLC's pharmaceutical and consumer healthcare business is directed, controlled and coordinated from Philadelphia, and LLC is the primary and significant part of Holdings's business, Holdings's "nerve center" is in Pennsylvania where its principal place of business is located.  Accordingly, pursuant to 28 U.S.C. § 1441(b), Holdings cannot remove these actions from the Pennsylvania state court.